**Criminal Justice Data Sharing and Notification Project (DSN) 2019**                1 of 19
**Program Narrative**

1.  **Statement of the Problem:**

Louisiana has historically ranked as the state with the highest incarceration rate.[1] From 1985 to 2010, Louisiana's prison population grew by 267% and corrections spending increased by 400%. In 2017, under the leadership of Governor John Bel Edwards, Louisiana passed historic criminal justice reforms aimed at reducing the prison population and state spending, while also implementing smart criminal justice practices aimed to improve public safety for the citizens of Louisiana. As a result, partnerships formed between criminal justice agencies and community organizations and Louisiana's prison population declined. As of July of 2018, PEW reported that Louisiana no longer led the nation in imprisonment and that "state leaders decided in 2016 that additional steps could bring greater progress—while also ridding Louisiana of the dubious distinction of being the state that imprisons more of its citizens than any other."[2]

Since that time, Louisiana's population in state custody and on supervision has continued to decline, with just over 33,000 serving time in the state's custody and 62,000 on supervision by Probation and Parole (P&P), a total decrease of 10%. The unique housing arrangement that Louisiana has for state offenders creates an ideal opportunity to further enhance public safety by making improvements in performance through increased focus on violent, high risk, and high need offenders.

---

[1] Heather C. West, William J. Sabol and Srah J. Greenman, *Prisoners in 2009* (Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, 2010), 24.
[2] Adam Gelb and Elizabeth Compa, *Louisiana No Longer Leads the Nation in Imprisonment Rate* (https://www.pewtrusts.org/en/research-and-analysis/articles/2018/07/10/louisiana-no-longer-leads-nation-in-imprisonment-rate).

In 1996, the United States District Court for the Middle District of Louisiana approved a Settlement Agreement that ended Court supervision and consent decrees in Louisiana's jails and prisons. As part of the Settlement, the State established a formal partnership with Louisiana Sheriffs for the housing of state offenders. Department of Public Safety & Corrections (DPS&C) and the Louisiana Sheriffs' Association (LSA) established Basic Jail Guidelines (BJG), to assure that the fundamental constitutional rights of DPS&C offenders housed in local jails would not be jeopardized. Today, the agreement acknowledges that to effectively prepare offenders to transition from jail to community, reentry strategies must be deployed to address public safety risks, while benefitting offenders and their families, victims, and the entire community. Unfortunately, the functional processes around this agreement remain as antiquated as they were in 1996 and represents part of the public safety problem which this proposal intends to resolve.

When a person is sentenced to state custody in Louisiana, they are initially housed at the local level and most will remain at the local level throughout their incarceration period. The exceptions include those with a death sentence, sentences over 20 years, or with possible or known medical, mental health or disciplinary needs, as they are moved into state custody upon identification of these factors. We are also currently modeling a new abbreviated reception process with three jurisdictions which will transfer these offenders into a state reception center for initial screening for the noted factors. Otherwise, following conviction, the Clerks of Court forwards commitment documents to the Sheriff in the respective jurisdiction. The Sheriff is then responsible for compiling the other necessary case documents and forwarding a completed packet to the DPS&C, usually by mail, hand delivery, or fax. Once the paperwork is received, the offender is keyed into the DPS&C system and processing begins to identify characteristics that will facilitate an offender's case plan, including crime type (violent verses non-violent), length of sentence, risk

**Criminal Justice Data Sharing and Notification Project (DSN) 2019    3 of 19
Program Narrative**

level, needs, judicial referrals, and, release date. Offenders housed at the local level may be transferred between local level facilities by local Wardens, as needed for jail management, with little to no case planning.

In 2012, DPS&C underwent a Lean Six Sigma review of this process. The project team manually collected information to identify the cycle time from the point of conviction to the point at which an offender's time computation is completed, representing the time when a case plan could be developed. The overall cycle time was 38 days, of which 31 days was post-conviction time in which DPS&C did not have the paperwork to accept and work the case. Implementation of solutions from this review have been successful, however the project did not address the cumbersome front-end paperwork process. As a result, there remains a delay in identifying and processing cases, which leads to an increase in transfers at the local level and an increase in offenders who are due for immediate release based on jail credit and diminution of sentence laws. The issues that result from this delay, in conjunction with Louisiana's complex sentencing laws, has resulted in negative findings by the Louisiana Legislative Auditor around offender location accountability and time computation processes.[3]

When offender transfers are not managed from the beginning, the offender's ability to effectively participate in programs and services is diminished, thus increasing the likelihood of recidivism. Often, high needs cases are identified only after a significant number of transfers between local jail facilities (i.e. when an offender is moved as a result of disciplinary behavior without interventions to improve their behavior). This can result in anti-social behavior patterns in violent offenders not being sufficiently addressed prior to release. There is currently no

---

3 Purpera, Daryl G. (2017, October). Department of Corrections Performance Audit. Retrieved from
https://www.lla.la.gov/reports-data/audit/Agency/index.shtml?key=D&agency=Department of Corrections.

automated way of looking at transfer data to evaluate opportunities for improvement or reduce the number of transfers. Historic transfer data for 2018 reflects that transfers at the local level average 3,291 per month. The high numbers of transfers negatively impacts the billing and payment of housing per diems to local partners, thus improvements can also save staff time and resources in the auditing process of financial transactions that are currently done to ensure accurate monthly billing.

In 2017, DPS&C had an average of 200 cases per month considered an "immediate release" due to these deficiencies. This includes those cases which become immediately eligible for release as a result of jail credit or the application of diminution of sentence laws. A review of these releases indicate the offenders were held in custody an average of 49 days past the date that they would have been eligible for a diminution of sentence release. Calculated at the rate paid to our local law enforcement partners for housing state offenders, $24.39/day, immediate releases are costing the state $239,022 per month, or $2.8M per year in housing costs alone. This does not include the criminal justice system expenditures by law enforcement, courts, district attorneys, and public defenders, nor public safety costs to victims, associated with the recidivism for those who do not get programs and services to improve their opportunity for success before release.

Louisiana also lacks the processes, procedures, and technology to break down information "silos" to implement data-sharing and notification systems about violent, high risk, and high need offenders moving into prison, between prisons, or being released into communities. We know that over the past 5 years we have had an average of 16,544 admissions per year, of which 21% are violent offenders. Additionally, of the 200 immediate releases each month, 10% are violent offenders. However, we have no method for sharing that information with stakeholders, and, unfortunately, this level of information is not available in a timely manner due to the paper

processes in place post sentencing. Due to these outdated and incomplete processes, these offenders are returning to the community without sufficient case plans. Add to that the lack of an effective notification system and we compound the problem with law enforcement and community service providers not being aware that violent, high risk, and high need offenders are returning to their communities with the need for ongoing support and monitoring to ensure success and public safety.

As we focus resources and partnerships around data driven decision making to prevent and reduce crime in Louisiana, one important measure of success is the reduction of our prison and supervision populations. Over time, we anticipate the ability to measure similar reductions in crime rates and recidivism. With this proposal, we will be equipped to build upon those reductions by improving the turnaround time for identifying offenders remanded to our custody, developing their case plans, and strategically focusing available resources on violent, high-risk, and high-need offenders to improve public safety through higher reductions in crime and recidivism.

Louisiana had success in research-based partnerships to prevent and reduce crime, including most recently the Crime Prevention Initiative (CPI) funded by BJA. CPI proved positive outcomes based on an effective research and theory based approach to reducing recidivism and violence among high-risk reentry cases with enhanced supervision strategies and research based service components. The study concluded that the use of a Day Reporting Center and enhanced P&P services "had a protective effect on decreasing multiple aspects of negative future outcomes and increasing positive outcomes.[4]"

---

[4] Scharf, Peter (2014, October). Final Report: New Orleans and Baton Rouge Louisiana Department of Correction and Public Safety CPI Violent Crime Prevention and Recidivism Reduction Initiative.

**Criminal Justice Data Sharing and Notification Project (DSN) 2019      6 of 19
Program Narrative**

The DPS&C has built a number of collaborations among justice system stakeholders and community partners to deliver a collaborative effort to reduce crime. The accomplishments of those collaborations include recent justice reinvestment initiatives which have resulted in the reinvestment of $2.5M in savings into community grants for service providers to provide wrap around services to those on supervision. In addition, DPS&C is investing $2M into the partnerships with local law enforcement partners who are housing offenders at the local level to support the expansion of programs and services being offered in local jails. There is also a reinvestment of $500,000 into specialty courts; $1.7M in victim services; $900,000 in Day Reporting Centers; and $370,000 in transitional housing, all focused on improving justice outcomes.

A recent collaboration with Louisiana State University, made possible through another BJA grant, enabled Louisiana DPS&C to build, validate, and automate a risk needs responsivity tool, that will drive evidence-based case plans for offenders beginning at sentencing and following them through successful completion of their sentence.

We also have a long list of data sharing collaborations via Memorandums of Understanding with Louisiana Workforce Commission (LWC), Department of Health (LDH), Department of Children and Family Services (DCFS), and Department of Veteran Affairs (DVA). We also collaborate and have staff assigned to work with other law enforcement agencies on a statewide basis (see attached) with specific focuses on reducing crime, including: Louisiana State Fusion and Analytical Exchange Center, East Baton Rouge Violent Crime Unit, US Marshal Task Fugitive Task Force, FBI – Joint Terrorism Task Force, FBI – Criminal Intelligence Task Force, and Louisiana Attorney General Fugitive Task Force. Our P&P staff in each district are also involved

in numerous community and regional based collaborations with local law enforcement organizations in their respective areas.

DPS&C will soon be embarking on much needed data modernization project to update its antiqued data systems and improve existing processes. However, this project does not include the opportunity for addressing the high-cost problems caused by inefficient front end processes for identifying state offenders housed in the local level and ensuring timely access to programs and services to prepare for their return to the community. The inability to timely share information with other law enforcement agencies, courts, prosecutors, the Louisiana Board of Pardon's Committee on Parole (Parole Committee), or defense attorneys, and as importantly, the community service organizations, is a compelling public safety problem that could be addressed with the implementation of a data analytics tool and web-based information system that supports improved reentry services. For these reasons, Louisiana submits this proposal as an opportunity to build the state's capacity for analyzing, identifying, and responding to drivers and reducing cost of crime.

A successful project would result in a reduction in offender transfers at the local level, more appropriate responses to disciplinary issues, and a reduction in the number of immediate releases. It would also improve data sharing between criminal justice partners on the front and the back end, resulting in improvements in data driven case plans and improved public safety.

**Criminal Justice Data Sharing and Notification Project (DSN) 2019** <span>8 of 19</span>
**Program Narrative**

**2.     Project Design and Implementation**

The Louisiana **Criminal Justice Data Sharing and Notification (DSN) Project** (Initiative) will develop and implement a strategy to resolve critical components of justice reinvestment that will improve information sharing with law enforcement and inform appropriate interventions, both before and after release, to reduce recidivism and improve public safety. Further, it will advance the state's justice reinvestment goals of reducing recidivism and correctional costs. This Initiative proposes to target violent, high risk, high need offenders as these present the greatest public safety threat and highest likelihood of recidivism. Those critical components are case processing, data analysis and data-driven decision making. This innovative initiative would engage the following criminal justice and community stakeholders: local law enforcement, prosecutors, defense attorneys, community partners, including JRI community grant recipients, local reentry coalitions, LWC, LDH, DCFS, and DVA.

The proposed project has two major deliverables, including a web-based portal for commitment demographics & documents and an analytics tool.

**Web-based Portal for Commitment Demographics & Documents**

A web-based portal for commitment demographics and documents will streamline case processing by automating the initial case planning process, which is currently dependent upon mailing or faxing required documents from Sheriffs' offices to DPS&C. Through this project we will develop and implement a web portal for local facilities housing DPS&C offenders. We will engage the Louisiana Sheriffs' Association, local law enforcement, P&P, Clerks of Court, Courts and the Parole Committee to identify drivers causing document delays and opportunities for improvement. We will also seek input from these stakeholders on the design of this portal system through focus group meetings with local jail staff, jail wardens, Parole Committee members, and

**Criminal Justice Data Sharing and Notification Project (DSN) 2019**      9 of 19
**Program Narrative**

P&P staff. Through these focus groups, we will identify pilot areas and develop from the pilot experience an implementation plan focused on jails selected by the project team to participate as pilots, with a long range goal of statewide implementation.

The portal will enable the local jail staff to notify DPS&C of admissions to DPS&C custody to assist in streamlining accountability, per-diem billing, and case processing. The initial notification will be based on the input of required demographic information, which is currently collected on paper forms, for each offender sentenced to state time into the portal. This initial web-based input will improve DPS&C's ability to track offender movements while housed in local custody.

Next, additional documents required by DPS&C would be scanned and loaded into the portal, including identification verification documents, sentencing/court documents, and signed DPS&C acknowledgement forms to enable DPS&C staff to process the case. The portal will include the ability to track the date of receipt for each document and enable notifications of completed information packets for staff action. The portal will also include a system for notification reminders to regularly alert local jail staff via email of needed documentation for pending cases. DPS&C staff will accept the documents and import them into DPS&C's file sharing system. Staff will then be able to process the case or communicate through the portal with the local facility staff if additional information or clarification is needed. Protocols have already been established to determine what documents constitute a completed packet for submission. Additional protocols will be developed in cooperation with stakeholders to refine documentation requirements and improve processes to enable offender transfer tracking based on the initial demographic information, even before the case processing packet is complete.

**Criminal Justice Data Sharing and Notification Project (DSN) 2019　　　　　　　　　10 of 19
Program Narrative**

We will host focus group meetings with Clerks of Court and court staff to identify drivers that could be causing delays in court documents being received and also to discuss opportunities to develop communication and notification systems with the court through this portal. While communications with the court are not a routine part of the case processing, there are times when the time computation staff have questions about sentencing that can only be answered by the Clerks or court staff. The portal could serve as a more efficient means for handling these communications.

Currently the local facilities are required to notify DPS&C of movements and submit weekly a census count of those housed in their facility. This portal would also be used for the local facilities to notify DPS&C of transfers of state offenders housed in their facilities. Based on the protocols developed in the focus group meetings, this new system would alert DPS&C when an offender is transferred an excessive number of times or when a transfer occurs after the offender has been scheduled for a Parole Committee hearing, a video court appearance, or a medical appointment, which today causes a waste of resources in scheduling conflicts. Excessive transfers typically indicate a behavior adjustment problem and would indicate the offender may be better housed at a state facility for access to treatment, services and mental health staff. With quality implementation at the local level, the system would enable, for the first time, access to real time daily count data for the offenders housed at the local level, improving and automating weekly counts and monthly billing processes. Protocols for implementation of this project would include process for data quality control and verification by the local jail staff weekly.

This system will automate monthly billing for local jails by generating, for each facility housing DPS&C offenders, a report on the offenders held in their custody during the month. The bill will be verified and submitted to DPS&C for payment based on the information in the system. Any discrepancies in the bill would be able to be rectified in the portal to generate an accurate bill

**Criminal Justice Data Sharing and Notification Project (DSN) 2019**     11 of 19
**Program Narrative**

and reduce the need for time-consuming billing corrections on the back-end by DPS&C staff. This portal will ensure accurate and timely reporting of DPS&C offenders.

By developing and implementing the portal, the theory of change is 1) automate the process in order to reduce time in receiving documents needed to process a case; 2) increase accuracy in state offender location and identification in order for DPS&C to take action in a timely manner; 3) improve billing accuracy and accountability; and 4) produce real time counts. Ultimately, this initiative will generate cost savings by decreasing case processing time and decreasing the number of offenders that are considered immediate releases, as the time they are waiting for processing equates to days and money saved.

### Implement the Use of a Data Analytics Tool

Through this Initiative, DPS&C will purchase an analytics tool to use for data analysis and providing dashboards and reports for data-driven decision making. We will use this tool to share with law enforcement, prosecutors, defense attorneys, community partners and other stakeholders to enhance our public safety partnerships. Strategic implementation of the tool would also include the development of policy and procedures, including data governance, and training plans. Providing consistent offender specific information will ensure partners are aware of violent, high-risk, and high-need individuals and that they can access intelligence about offenders to aide in ensuring proper management of cases.

Through Louisiana's recent JRI initiatives and DPS&C's reentry initiatives, the need to communicate data to our stakeholders has increasingly become a priority. Unfortunately, our current system can only provide "flat text" file data extracts and snap shot reports. We do not have the system capabilities or staff to provide stakeholders with current information in order for them

to make informed decisions about those releasing back to their communities. The state's Office of Technology Services will soon be embarking on a project to update DPS&C's legacy system, utilizing a phased approach, which is anticipated to take 3 to 5 years. While the front-end processes and data sharing goals of this Initiative are not part of that data modernization project, the need for these systems are no less important to the state's criminal justice reform goals. The importance of providing information to stakeholders, both those in law enforcement and other community partners, is as critical to our reform success.

The purchase of a web-based data analytics tool will provide DPS&C with the capabilities to create dashboards and reports of existing data, as well as the improved data available from the web-portal, that can be published for partner use. We propose to host focus group meetings with criminal justice stakeholders, community services providers, and DPS&C staff (i.e. P&P and the Parole Committee) to determine what dashboard information would be most helpful for violent, high-risk, and high need offenders preparing to release to the community and to develop protocols for this data sharing initiative.

This information will be used to enable support services to returning population that will help them successfully transition to the community. Based on these discussions and requested information, we will design the needed data extracts from our current system to update the tool and determine the frequency in which these updates need to occur. We also plan to meet with LVA, LDH, DCF&S, and LWC to modernize our existing data sharing practices using the analytics tool. Currently, we share snapshot files to support their processes, but the new portal would provide them with live data as needed to improve some of our current processes with them. We will design interactive dashboards based on the protocols established in our discussion with stake holders to allow them to view and request more detailed data when needed. These protocols and tools will

allow the DPS&C to provide a consistent way of reporting our data with transparency and availability for the department and stakeholders to use as needed.

As our department's legacy systems evolve into our modernization project this tool will be used for reporting throughout this evolution. As areas are modernized, the determined protocols will be used to insure data collected is transferred to the tool and the way we report and share information remains consistent with the protocols developed.

Filters will be available to allow for customized dashboards and reports for the area of stakeholder interest (i.e. by court, parish of conviction, facility location, releasing location, using zip code, parish, or city). Violent, high risk, and high needs offenders can be identified through the dashboard's customized reports for both justice and non-justice agencies to inform and guide policy decisions, as well as funnel the returning citizens into the right programs and services to help in their transition.

By developing and implementing data dashboards and other reports using a data analytics tool, the theory of change is that we will: 1) develop information sharing protocols to ensure awareness of violent, high-risk, and high need returning citizens so they are managed appropriately through reentry and supervision 2) increase the DPS&C's data analysis capacity 3) improve our Justice system partnerships through the use of automated data sharing to facilitate better partnerships, and 4) develop training protocols for staff use of data-sharing system to ensure optimal implementation of the system's capabilities. This project will benefit Louisiana by providing public safety through reduced spending, reduced crime rates, and reduced recidivism.

An evaluation will include collection of data and analysis related to program implementation and impact. A primary focus of the program is development of a reporting system to submit offender-related data to DPS&C. To provide a baseline assessment of key performance

metrics, the evaluation will collect data from the 2012 DPS&C review as well as more recent measures of the time between point of conviction and document receipt as well as cycle time between point of conviction and point at which an offender's time computation is completed. Because of delays in processing this paperwork, Louisiana currently has an elevated number of immediate releases when an offender is released before a case plan can be developed. These delays reduce the reentry services that can be provided, which ultimately may lead to elevated recidivism rates. Additional baseline data will also be collected on immediate releases, services provided, crime rates by type of crime and recidivism by offender characteristics.

To strengthen the research design of the evaluation, a group of local jails will be selected to participate as pilots in the program. These pilot participants will serve as the initial treatment group while other local jails will serve as controls. While randomization across all local jails would provide a strong research design, some local jails are engaged in local initiatives that may provide enhanced services, there is considerable variation across jails in the number of individuals released each month. To better isolate the impact of this program, local jails undertaking major initiatives will be excluded from the pilot (and from the control group in any analysis) and pilot jails will be randomly selected within size class and region of the state to ensure a balanced set of treatment and control jails.

The evaluation will collect data on program implementation as well as track key outcomes to determine impact. Those outcomes include time between point of conviction and document receipt by DPS&C, cycle time from the point of conviction to the point in which an offender's time computation is completed (representing the time when a case plan could be developed), number of immediate releases, average days in custody beyond immediate release eligibility date, number of transfers, and number of offenders getting reentry services (by sentence length

category). Estimates of reduction in custody days can be augmented to estimate the associated cost savings from reduction in days beyond immediate release eligibility. In addition, data on recidivism and crime rates within treated areas can be compared to untreated areas during the pilot to determine longer-term cost savings and broader public safety benefits of the program. Once the program is rolled out statewide, comparisons over time can be used to provide updated, statewide assessments of the program's impact.

In addition, program implementation data will be captured to provide monitoring data as well as provide additional contextual data to validate mechanisms driving changes in primary outcomes. For example, in areas reporting timely data more consistently, the evaluation will examine if their improvements are greater than seen in areas with less consistent use of the new platform. Similarly, to provide additional context on the value of the analytics dashboards, data on visitation, page views, and duration of site visits will be captured to measure engagement and provide additional context to validate mechanisms driving changes in primary outcomes. Finally, automated queries will be developed to measure and track completeness of data submitted to determine how well implementation protocols are followed.

We are seeking priority consideration based on the operational gaps that exist and drive repeat violent, high risk, and high need offenders who are not afforded timely access to programs and services prior to release. While we offer programming and services on the local level, more availability and variety to meet specific needs is available in state prisons and the lack of information available for community partners to provide services and supports upon release. Currently, 50% of the DPS&C admissions are revocations of those on supervision, of which 9% are serving time for violent crimes. And, of those who are immediate releases, on average 25% of them are 3rd offender or higher offender class. The implementation of this portal system data

**Criminal Justice Data Sharing and Notification Project (DSN) 2019** 16 of 19
**Program Narrative**

sharing initiative, will enable DPS&C to fill the operational gap that exists in identifying these offenders quickly upon return and provide them priority consideration for programs and services.

**Criminal Justice Data Sharing and Notification Project (DSN) 2019** 17 of 19
**Program Narrative**

## 3. Capabilities and Competencies

The DPS&C is the applicant/lead agency for this project and will manage and direct all aspects of the project. The DPS&C will hire a project director, a part-time administrative assistant, a policy planner, and a classification liaison to oversee the project and assist in data collection, implementation, and project oversight. The DPS&C's headquarters is comprised of divisions that support the management and operations of the adult institutions responsible for the custody and care of nearly 33,000 adult offenders across Louisiana, adult P&P District Offices supervising an additional 62,000 offenders, and all other services provided by the DPS&C. The DPS&C was awarded, and has successfully managed to date, BJA Second Chance Act grants for Reentry Program for Adult Offenders with Co-Occurring Disorders (2011), Adult Offender Reentry Program for Planning and Demonstration Projects (2011), Statewide Recidivism Reduction (2013), Justice Reinvestment Initiative (2014), Smart Supervision (2016), and Smart Reentry (2017). Data collected on DPS&C evaluations of immediate releases, transfers, elapsed time from conviction to time computation, and releases by location will inform the implementation of the Criminal Justice Data Sharing and Notification Project.

The DPS&C will contract with the State of Louisiana's Office of Technology Services (OTS) to develop the web-based portal and dashboard system. The DPS&C project team will work with OTS to ensure the data collected and exported from these tools are compatible with the work being done to modernize the existing information systems. The project team will collaborate with the select pilot sites to insure the tools are functional and effective for the needs of the various criminal justice and community partners involved in the Initiative.

**Criminal Justice Data Sharing and Notification Project (DSN) 2019**     18 of 19
**Program Narrative**

      DPS&C will partner with Louisiana State University, Department of Economics and the Economics & Policy Research Group (LSU) to conduct the program evaluation. Dr. Stephen Barnes is Director of the LSU Economics & Policy Research Group and an Associate Professor of Research in the Department of Economics at LSU. Dr. Barnes completed his Ph.D. in Economics from The University of Texas at Austin in 2008 and has 10 years of experience in applied economics including conducting several program evaluations. Dr. Barnes has experience working with DPS&C data including academic research using these data and crime-related data from local jurisdictions in Louisiana. Dr. Barnes will assist with selection of pilot sites to ensure the evaluation has an adequate control group for drawing more general inferences about the impacts measured among treated sites. In addition, Dr. Barnes will be responsible for collecting all evaluation-related data, conducting the statistical analysis and producing the final evaluation report.

**Criminal Justice Data Sharing and Notification Project (DSN) 2019 Program Narrative**　　19 of 19

## 4. Plan for Collecting the Data Required for this Solicitation's Performance Measures

Performance measures will be documented by the DPS&C. Data will be collected by the project director, administrative staff, DPS&C, and LSU consistent with the performance measures outlined in Appendix A of the grant solicitation. Data collected will support the objectives of promotion and increasing collaboration among justice system agencies; increase in the capacity to analyze and respond to data through comprehensive data analytics and data sharing; and increase coordinated responses of justice agencies. Performance measures will include partner involvement, staff support, training outcomes, and project evaluation.