**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| BRIAN HUMPHREY, *et al.*,<br>Plaintiffs,<br>v.<br>JAMES LEBLANC,<br>Defendant. | Civil Action No. 3:20-CV-0233<br>Judge John W. deGravelles<br>Magistrate Judge Scott D. Johnson |
| JOEL GIROIR, *et al.*,<br>Plaintiffs,<br>v.<br>JAMES LEBLANC,<br>Defendant. | Civil Action No. 3:21-CV-0108<br>Judge John W. deGravelles<br>Magistrate Judge Scott D. Johnson |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**

# TABLE OF CONTENTS

**Page**

BACKGROUND ..... 1

LEGAL STANDARD ..... 3

ARGUMENT ..... 4

I. Defendant Is Unlikely to Succeed on the Merits of His Appeals ..... 4

A. Defendant's Qualified Immunity Arguments Are Unavailing ..... 4

B. Mr. Giroir's Claims Are Not Moot ..... 8

C. The Certified Classes Meet All Requirements of Rule 23 ..... 12

II. Defendant Fails to Demonstrate Harm Sufficient to Support a Stay ..... 13

III. A Stay Would Prejudice Plaintiffs and the Class in This Already-Delayed Litigation ..... 14

IV. The Public Interest Favors Continued Discovery to Remedy Defendant's Rampant, Costly Overdetention of Louisianans ..... 14

CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. A. ex rel. P.A.* v. *Phillips*,
No. 19-cv-0770, 2021 WL 2589180 (M.D. La. June 24, 2021) ....................................4, 13, 14

*Alexander* v. *Hall*,
No. 4:20-cv-0021, 2024 WL 4268017 (N.D. Miss. Sept. 23, 2024)..........................................8

*Amgen Inc.* v. *Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)..........................................................................................................11

*Barnes* v. *District of Columbia*,
242 F.R.D. 113 (D.D.C. 2007)..........................................................................................12

*Bogard* v. *Cook*,
586 F.2d 399 (5th Cir. 1978) ..............................................................................................7

*Book People, Inc.* v. *Wong*,
91 F.4th 318 (5th Cir 2024) ..............................................................................................14

*Burgess* v. *Fed. Deposit Ins. Corp.*,
871 F.3d 297 (5th Cir. 2017) ..............................................................................................4

*Crittindon* v. *LeBlanc*,
37 F.4th 177 (5th Cir. 2022) ............................................................................................5, 6

*Cruson* v. *Jackson Nat'l Life Ins. Co.*,
No. 4:16-cv-0912, 2018 WL 2937471 (E.D. Tex. June 12, 2018) ..........................................4

*Douthit* v. *Jones*,
619 F.2d 527 (5th Cir. 1980) ..............................................................................................6

*Duarte ex rel. Duarte* v. *City of Lewisville, Tex.*,
759 F.3d 514 (5th Cir. 2014) ............................................................................................11

*Dunn* v. *Cuyahoga Cnty.*,
No. 1:23-CV-0364, 2026 WL 879235 (N.D. Ohio Mar. 31, 2026).......................................12

*Earl* v. *Boeing Company*,
21 F.4th 895 (5th Cir. 2021) ............................................................................................3, 4

*Gene & Gene, L.L.C.* v. *BioPay, L.L.C.*,
624 F.3d 698 (5th Cir. 2010) ..............................................................................................3

*U.S. Parole Comm'n* v. *Geraghty*,
445 U.S. 388 (1980)....................11

*Gerstein* v. *Pugh*,
420 U.S. 103 (1975)....................10

*Gladney-Chase* v. *Collins*,
38 Vet. App. 216 (2025)....................12

*Healey* v. *Louisville Metro Gov't*,
No. 3:17-cv-0071, 2021 WL 149859 (W.D. Ky. Jan. 15, 2021)....................12

*Hicks* v. *LeBlanc*,
81 F.4th 497 (5th Cir. 2023)....................5, 8, 14

*Hill* v. *Cnty. of Montgomery*,
No. 14-cv-0933, 2018 WL 3979590 (N.D.N.Y. Aug. 20, 2018)....................7

*Innova Hosp. San Antonio, Ltd. P'ship* v. *Blue Cross & Blue Shield of Georgia, Inc.*,
892 F.3d 719 (5th Cir. 2018)....................3

*Jones* v. *Diamond*,
594 F.2d 997 (5th Cir. 1979)....................7

*M.D.* v. *Perry*,
No. 11-cv-0084, 2011 WL 7047039 (S.D. Tex. July 21, 2011)....................14

*Magnolia Island Plantation, L.L.C.* v. *Whittington*,
29 F.4th 246 (5th Cir. 2022)....................5

*McNeal* v. *LeBlanc*,
90 F.4th 425 (5th Cir. 2024)....................5

*Microsoft Corp.* v. *Baker*,
582 U.S. 23 (2017)....................3

*Morrow* v. *Washington*,
No. 2:08-cv-0288, 2009 WL 2591382 (E.D. Tex. Aug. 20, 2009)....................8

*Mullen* v. *Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999)....................12

*Parker* v. *LeBlanc*,
73 F.4th 400 (5th Cir. 2023)....................5, 8

*Plaquemines Par.* v. *Chevron USA, Inc.*,
84 F.4th 362 (5th Cir. 2023)....................3, 5

*Porter* v. *Epps*,
659 F.3d 440 (5th Cir. 2011) ....................................................................................5

*Robidoux* v. *Celani*,
987 F.2d 931 (2d Cir. 1993)......................................................................................12

*Ross* v. *Gossett*,
No. 15-cv-0309, 2020 WL 1472072 (N.D. Ill. Mar. 26, 2020) ................................................7

*Tellis* v. *LeBlanc*,
No. 18-cv-0541, 2020 WL 1249378 (W.D. La. Mar. 13, 2020).....................................8, 9, 11

*Thorpe* v. *Va. Dept. of Corr.*,
No. 20-cv-0007, 2023 WL 2908575 (W.D. Va. 2023) ............................................................7

*Vine* v. *PLS Fin. Servs., Inc.*,
No. 4:18-cv-0450, 2019 WL 4257108 (E.D. Tex. Sept. 9, 2019).............................................3

*Ward* v. *Hellerstedt*,
753 F. App'x 236 (5th Cir. 2018) ...............................................................................9

*Zeidman* v. *J. Ray McDermott & Co.*,
651 F.2d 1030 (5th Cir. 1981) .........................................................................9, 10, 11

**Other Authorities**

Fed. R. Civ. P. 23 .............................................................................................. *passim*

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**

Plaintiffs, through undersigned counsel, oppose Defendant James LeBlanc's motion to stay ("Motion" or "Mot.") pending the resolution of his appeals of this Court's decision granting class certification in the above-captioned cases. Stays are extraordinary relief and rarely granted, particularly in the context of a pending appeal pursuant to Rule 23(f). No stay is warranted here.

*First,* Defendant fails to show that he is likely to prevail on arguments that this Court has already rejected. Qualified immunity does not preclude certification, Mr. Giroir's claims are not moot, and the classes meet all requirements of Rule 23.

*Second*, Defendant cannot demonstrate the irreparable harm or prejudice that could justify a stay. Increased litigation and discovery costs are legally insufficient to satisfy his burden.

*Third*, the public's interest and Plaintiffs' interests would be harmed if a stay were to be granted.

Accordingly, Defendant's Motion should be denied, and discovery should proceed, so that Plaintiffs can continue to pursue relief on behalf of themselves and the certified classes, including the many individuals who are still being overdetained by Louisiana Department of Safety and Corrections ("DOC").

**BACKGROUND**

For more than five years, Defendant has continually resisted discovery in these cases, and the instant motion is indicative of the same. Plaintiffs brought these actions in 2020 and 2021 to challenge the DOC's rampant practice of unlawful overdetention, seeking damages in *Humphrey* v. *LeBlanc*, No. 3:20-cv-233 (M.D. La.) (hereinafter, *Humphrey*) and declaratory and injunctive relief in *Giroir* v. *LeBlanc*, No. 3:21-cv-108 (M.D. La.) (hereinafter, *Giroir*). The two cases were consolidated for purposes of discovery on May 5, 2021. *Giroir*, Doc. 23. As this Court observed

in mid-2023 when the DOC moved to stay discovery until a ruling on class certification, "this litigation [was then] 3 years old" and "discovery [was] dead in the water" because the DOC "refuse[d] to engage in any merits-based discovery until the pending Motions to Certify Class are resolved." *Humphrey*, Doc. 199 at 3. This Court remarked that "[t]his theme—a refusal to engage in merits-based discovery—runs through every pending discovery Motion and has caused significant delays." *Id.* at 4. This Court ordered merits-based discovery to proceed "immediately" at that juncture, *id.*, and Plaintiffs respectfully request the Court order the same now.

Even after the Court's admonition, two years later, Defendant again took the position that continuing to produce "Pull Documents" was premature until the parties had a ruling on Plaintiffs' Motion for Class Certification. *Humphrey*, Doc. 257-2, at 1–2. This Court certified classes in *Humphrey* and *Giroir* on September 22, 2025. *Humphrey*, Doc. 260; *Giroir*, Doc. 164. On October 6, 2025, Defendant filed for permission to appeal class certification in both *Humphrey* and *Giroir* under Federal Rule of Civil Procedure 23(f). *See Humphrey*, Doc. 261. Two weeks later, at a status conference, the Court reiterated that "the information in the pull documents is relevant to this case, in that it is determinative of class membership." *Humphrey*, Doc. 263 at 1.

When the parties again appeared before this Court on February 26, 2026, Plaintiffs urged the need for additional data from 2019 forward, the Court noted that the case "is already five years old" and "needs to be resolved quickly." *Humphrey*, Doc. 276 at 1. Despite the Court's repeated urges to press on, Defendant's delays and obstructionist tactics continue, creating further needless discovery disputes. *See Humphrey*, Doc. 280.

The instant Motion represents Defendant's latest effort to delay producing relevant information. Defendant now seeks to stay all discovery pending resolution of his pending Rule 23(f) appeals by the Fifth Circuit. He suggests that the Fifth Circuit's ruling is "imminent" and

will likely come out in his favor, despite the fact that briefing in the *Humphrey* appeal has yet to commence, *Humphrey* v. *LeBlanc*, No. 26-30301 (5th Cir.), Doc. 47, oral argument is not set in either appeal, and his anticipated arguments will merely rehash those that this Court has already rejected. None of this supplies a reliable basis to assume a prompt decision, much less to halt work on claims Defendant has already unnecessarily delayed for years.

## LEGAL STANDARD

A party seeking a stay pending a Rule 23(f) appeal must show (1) a likelihood of success on the merits; (2) irreparable injury absent a stay; (3) that a stay will not substantially injure other parties; and (4) that a stay serves the public interest.[1] *Earl* v. *Boeing Company*, 21 F.4th 895, 898 (5th Cir. 2021). In general, "[a] stay pending appeal is 'extraordinary relief' for which defendants bear a 'heavy burden.'" *Plaquemines Par.* v. *Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023) (quoting *Vote.Org* v. *Callanen*, 39 F.4th 297, 300 (5th Cir. 2022) and quoting *Winston-Salem/Forsyth Cnty. Bd. of Educ.* v. *Scott*, 404 U.S. 1221, 1231 (1971)). Stays pending Rule 23(f) appeals are particularly "disfavored." *Vine* v. *PLS Fin. Servs., Inc.*, No. 4:18-cv-0450, 2019 WL 4257108, at *5 (E.D. Tex. Sept. 9, 2019). That is because Rule 23(f) is designed to permit interlocutory review of class certification without disrupting proceedings below. *See Microsoft Corp.* v. *Baker*, 582 U.S. 23, 38 n.9 (2017) ("Rule 23(f) avoids delay . . . by specifying that '[a]n appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.'") (quoting Fed. R. Civ. P. 23(f)); *Gene & Gene, L.L.C.* v. *BioPay, L.L.C.*, 624 F.3d 698, 703 (5th Cir. 2010) (the purpose of Rule 23(f) is "to ensure that there is only one window of

[1] Defendant mentions—but does not apply—the lesser "substantial case on the merits" standard and acknowledges it applies only when 1) there is a serious legal question *and* 2) the balance of the equities heavily favors a stay. Defendant's Memorandum in Support of Motion to Stay at 3, *Humphrey*, Doc. 287-1 ("Mem."). Because Defendant makes no argument as to why this standard would apply, including no argument as to how the appeals raise serious legal questions, any argument under that standard is waived. *See Innova Hosp. San Antonio, Ltd. P'ship* v. *Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 735 (5th Cir. 2018).

potential disruption"). Thus, a stay pending a Rule 23(f) appeal is "rare," *A. A. ex rel. P.A.* v. *Phillips*, No. 19-cv-0770, 2021 WL 2589180, at *1 (M.D. La. June 24, 2021) (citation omitted), and "should issue infrequently", *Earl*, 21 F.4th at 898 (citation omitted).

When assessing harms to the parties and the public interest, courts are demanding. "When evaluating claimed irreparable harm for a motion to stay proceedings, the Fifth Circuit applies criteria that is very similar to that it uses to assess irreparable harm in a motion for preliminary injunction." *Cruson* v. *Jackson Nat'l Life Ins. Co.*, No. 4:16-cv-0912, 2018 WL 2937471, at *4 n.3 (E.D. Tex. June 12, 2018). An injury is "'irreparable' only if it cannot be undone through monetary remedies." *Burgess* v. *Fed. Deposit Ins. Corp.*, 871 F.3d 297, 304 (5th Cir. 2017). "Increased litigation costs" and the "prospect of burdensome or expensive discovery alone [are] not sufficient to demonstrate 'irreparable injury.'" *A. A. ex rel. P.A.*, 2021 WL 2589180, at *2 (quoting *M.D.* v. *Perry*, No. 11-cv-0084, 2011 WL 7047039, at *2 (S.D. Tex. July 21, 2011)).

## ARGUMENT

### I. Defendant Is Unlikely to Succeed on the Merits of His Appeals

Defendant argues that he is likely to succeed on the merits, largely rehashing arguments that this Court has already correctly rejected, including that qualified immunity allegedly prohibits class certification in *Humphrey*, that Mr. Giroir's claims are supposedly moot, and that the Court's well-reasoned Rule 23(a) analysis was grossly flawed. As further set forth below, each of these arguments fails.

#### A. Defendant's Qualified Immunity Arguments Are Unavailing

Defendant contends that a stay is warranted because his "qualified immunity defense should have precluded certification and likely will result in reversal on appeal." *Humphrey*, Doc. 287-1 at 4. This Court has already rejected Defendant's qualified immunity argument at class

certification, *see Humphrey*, Doc. 260 at 94–95, 103–04, and there is no reason to think the Fifth Circuit is likely to upset that determination. Indeed, Defendant has not even briefed qualified immunity on appeal, and a party cannot show a "strong likelihood" of reversal on an argument that has not yet been presented to the appellate court. *See Plaquemines*, 84 F.4th at 373.

Nor is there any merit to Defendant's qualified immunity argument.

*First*, as Defendant appears to concede, *see* Mem. at 4, qualified immunity has no bearing on the *Giroir* class, which seeks only declaratory and injunctive relief against Defendant in his official capacity. Such claims are not subject to a qualified immunity defense. *Magnolia Island Plantation, L.L.C.* v. *Whittington*, 29 F.4th 246, 251 n.1 (5th Cir. 2022) ("[O]fficial capacity claims are not subject to a qualified immunity defense."). Even if Defendant was likely to succeed on the merits of his qualified immunity argument, which he is not, that argument would not yield reversal of the *Giroir* class certification, nor affect discovery in that case.

*Second*, even as to the *Humphrey* class, the law is settled against Defendant. "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter* v. *Epps*, 659 F.3d 440, 445 (5th Cir. 2011). Plaintiffs have met that burden here. The Fifth Circuit has repeatedly denied Defendant qualified immunity for the conduct at issue here, holding again and again that the right to timely release from prison is clearly established. *See McNeal* v. *LeBlanc*, 90 F.4th 425, 430–33 (5th Cir. 2024); *Parker* v. *LeBlanc*, 73 F.4th 400, 408 (5th Cir. 2023); *Crittindon* v. *LeBlanc*, 37 F.4th 177, 186–88 (5th Cir. 2022); *see also Hicks* v. *LeBlanc*, 81 F.4th 497, 504 (5th Cir. 2023); *Porter* v. *Epps*, 659 F.3d 440, 445 (5th Cir. 2011) ("There is a [c]learly

[e]stablished [r]ight to [t]imely [r]elease from [p]rison"); *Douthit* v. *Jones*, 619 F.2d 527, 532 (5th Cir. 1980).

*Third*, the qualified immunity inquiry here does not require individualized determinations. As this Court found, "deliberate indifference is the central issue in this case, and variations in individual circumstances do not change that fact." *Humphrey*, Doc. 260 at 86. Because the classes are certified "not based on the reasonableness of the number of hours detained (where individual circumstances might make a difference) but rather on LeBlanc's overall policies and how those policies led to constitutional violations," the class structure "largely obviates any individual analysis, except with respect to damages." *Id.* at 87. The task of confirming class membership is simple and clerical. DOC's own witness verified the 231 people in the February 2019 pull document in "roughly 20 hours," or 5.2 minutes each. *Id.* at 106. Such "simple, straightforward, and objective" determinations are "the epitome of a qualitatively insignificant question under the predominance test." *Id.* at 106 (quoting *Soutter* v. *Equifax Info. Servs., LLC*, 307 F.R.D. 183, 215 (E.D. Va. 2015)).

*Fourth*, Defendant's contention that "the 48-hour cut-off has no relation to what constitutes a clearly established violation" because the Fifth Circuit has "'declined to define' a delay shorter than a month as unconstitutional" is both wrong and beside the point. Doc. 287-1 at 4 (citing *Crittindon*, 37 F.4th at 188). As an initial matter, *Crittindon* held no such thing; there, the Fifth Circuit noted only that "courts have declined to define the amount of delay that is reasonable," and then denied qualified immunity. *Crittindon*, 37 F.4th at 188. And in any event, as this Court explained at certification, the absence of a bright-line rule is no obstacle to class treatment: "the key is *not* the number of hours class members were overdetained. Rather, the key is what *caused* those overdetentions—namely, LeBlanc's alleged policies and deliberate indifference."

*Humphrey*, Doc. 260 at 63. The 48-hour period thus is not a liability standard. It is a "'practical compromise' between the rights of detained inmates and the realities of processing release orders," *id.* at 67 (quoting *Healey* v. *Louisville Metro Gov't*, No. 3:17-cv-0071, 2021 WL 149859, at *19 (W.D. Ky. Jan. 15, 2021)), and the class membership turns on the cause of the delay: Defendant's "failure to implement and maintain an adequate process for timely releasing inmates." *Id.* at 115. The Court correctly held that "the 48-hour number included in those definitions is no hinderance to certification." *Id.* at 67.

Defendant's authorities are inapposite. Neither *Jones* v. *Diamond*, 594 F.2d 997 (5th Cir. 1979) nor *Bogard* v. *Cook*, 586 F.2d 399 (5th Cir. 1978) decided whether qualified immunity precludes certification. *Jones*, in fact, expressly declined to reach the question. 594 F.2d at 1022 n.24. In *Bogard*, the court declined to apply *res judicata* to bar a Rule 23(b)(3) damages class where judgment had been entered in a prior action with (b)(1) and (b)(2) classes, noting that a (b)(3) class was never sought in the prior action and would have been difficult to certify in that case because it—unlike *Humphrey*—involved a "laundry list of alleged abuses." 586 F.2d at 407–09. The *Bogart* court did <u>not</u> hold that a qualified immunity defense precludes certification under Rule 23(b)(3) and, indeed, that issue was never presented to the court. 586 F.2d at 406–09. Courts routinely certify class actions challenging prison policies under Rule 23(b)(3). *See, e.g.*, *Thorpe* v. *Va. Dept. of Corr.*, No. 20-cv-0007, 2023 WL 2908575, at *12 (W.D. Va. 2023) (certifying 23(b)(3) class over qualified immunity predominance arguments because qualified immunity hinged on "individual defendant's knowledge of the risk of substantial harm" caused by challenged policy); *Ross* v. *Gossett*, No. 15-cv-0309, 2020 WL 1472072, at *6 (N.D. Ill. Mar. 26, 2020) (certifying a Rule 23(b)(3) class about prison shakedowns despite the fact that "the class members' particular experiences may vary to some degree"); *Hill* v. *Cnty. of Montgomery*, No. 14-cv-0933,

2018 WL 3979590, at *14 (N.D.N.Y. Aug. 20, 2018) (certifying a Rule 23(b)(3) class about a prison's failure to provide adequate nutrition to inmates despite minor individualized concerns). The district court cases cited by Defendant are easily distinguishable: *Alexander* v. *Hall*, No. 4:20-cv-0021, 2024 WL 4268017, at *12 (N.D. Miss. Sept. 23, 2024), involved no "uniform practice or policy," and *Morrow* v. *Washington*, No. 2:08-cv-0288, 2009 WL 2591382, at *1 (E.D. Tex. Aug. 20, 2009), turned on whether each class member's search or seizure was "unreasonable" and in violation of the Fourth Amendment. Here, by contrast, as this Court has already recognized, the key question is not whether any one detention was reasonable but whether LeBlanc's policies caused the violations. *Humphrey*, Doc. 260 at 104. And in assessing qualified immunity in Louisiana overdetention cases, the Fifth Circuit has focused on the pattern of overdetention and top official's knowledge of it, rather than parsing the minutia of particular fact patterns. *See, e.g.*, *Parker*, 73 F.4th at 408 (noting LeBlanc's knowledge of the pattern, and concluding "Parker's complaint sufficiently alleges that LeBlanc violated a right that was clearly established."); *Hicks,* 81 F.4th at 506 (noting officials' knowledge of pattern, and concluding that the "district court did not err in denying Appellants' qualified immunity defense.")

### B. Mr. Giroir's Claims Are Not Moot

Defendant likewise has not, and cannot, show a likelihood of success on his arguments that Mr. Giroir's claims are moot and class certification precluded. In the class context, a named plaintiff's claims should not be dismissed as moot when they are "so inherently transitory that the trial court will not have enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Tellis* v. *LeBlanc*, No. 18-cv-0541, 2020 WL 1249378, at *6 (W.D. La. Mar. 13, 2020) (citing *U.S. Parole Comm'n* v. *Geraghty*, 445 U.S. 388, 399 (1980)). In such cases, the later-granted certification relates back to the filing of the complaint

despite the claims having expired because "no single named plaintiff could maintain a justiciable claim long enough to reach the class certification stage of the litigation." *Zeidman* v. *J. Ray McDermott & Co.*, 651 F.2d 1030, 1047 (5th Cir. 1981). That is precisely what occurred in Mr. Giroir's case.

Mr. Giroir timely filed his motion for class certification on February 19, 2021, and was released from custody three days later. *See Giroir*, Doc. 3. Because his claims were not justiciable long enough to reach the class certification stage, they qualify under the "inherently transitory" exception to mootness. *Tellis*, 2020 WL 1249378, at *6. That his motion for class certification was subsequently dismissed without prejudice before being refiled does not change the analysis.[2] *See infra*, p. 10.

The "inherently transitory" exception to mootness applies where the following four factors are met: (i) the challenged conduct is "fleeting or temporary [in] nature; [ii] uncertainty exists at the outset as to the duration of each plaintiff's exposure to the allegedly harmful conduct; [iii] it is unlikely that any given individual plaintiff could see his claim to fruition prior to [his] claim becoming moot; and [iv] there exists a constant group of people suffering the harm alleged by the plaintiffs." *Ward* v. *Hellerstedt*, 753 F. App'x 236, 242 (5th Cir. 2018). Mr. Giroir's claims clearly satisfy each of these factors.

*First*, "claims raised in the prison context," like those raised here, are "of a fleeting or temporary nature when the challenged action lasts as few as several days to as long as several months," which is precisely the nature of the challenged conduct here. *Tellis*, 2020 WL 1249378, at *7 (citing *Cnty. of Riverside* v. *McLaughlin*, 500 U.S. 44, 51–52 (1991)); *see Giroir*, Doc. 46 ¶

[2] In April 2021, the parties agreed to consolidate *Humphrey* and *Giroir*. *Giroir*, Doc. 20. The Court then dismissed Giroir's pending certification motion without prejudice—and without any further briefing—allowing Plaintiffs to refile the motion once class certification discovery was complete. *Id.* Plaintiffs did so in September 2021, and the Court granted the motion certifying the class on September 22, 2025.

19. *Second*, the length of overdetention "cannot be ascertained at the outset, and it may be ended at any time" depending entirely on prison officials' whim because of Defendant's failure to establish a policy requiring prompt release. *See Zeidman*, 651 F.2d at 1049 (citing *Gerstein* v. *Pugh*, 420 U.S. 103, 110–11 n. 11 (1975)). *Third*, it is unlikely that any individual being overdetained could see his claim to fruition because, for even the most egregious deprivations of liberty, delays typically do not exceed the time it takes the court to rule on certification. *See Giroir*, Doc. 46 ¶ 19. Indeed, the Court here took three years to decide the motion. *Finally*, as demonstrated by documents Defendant has already produced, hundreds of individuals in custody continue to suffer the harms caused by release delays, and their claims are capable of repetition yet evade review. As overdetention goes, "[m]ootness . . . follow[s] from the nature of the claim" because the plaintiffs "seek[] to challenge a form of confinement . . . which is ordinarily brief" and the "substantive claim must necessarily expire in a short period of time." *Zeidman*, 651 F.2d at 1049. This case thus presents the precise circumstances under which the Supreme Court contemplated "allow[ing] the district court a reasonable opportunity to rule on a pending motion for class certification despite the intervening mootness of the named plaintiffs' individual claims." *Id.* at 1047; *Gerstein*, 420 U.S. at 110–11 n.11 (finding a "suitable exception to [the mootness] requirement" where the length of pretrial custody was uncertain and plaintiffs could have been released at any time).

Defendant's contrary position is untenable for myriad reasons. *First*, Defendant relies on the consolidated certification motion filed in September 2021 to argue that no exception to mootness applies. But Defendant conveniently ignores a glaring truth: consolidation resulted from *agreement by the parties* requiring the Court to delay briefing on the then-pending certification motion. The Court agreed that judicial efficiency militated towards consolidation, and its denial

without prejudice of Giroir's February 2021 motion simply acknowledged that reality. Even where some of the *Ward* factors are not met, courts have found relation back appropriate where agreement to delay adjudication of the case "necessarily means that the timeframe during which Plaintiffs' claims may become moot has been expanded," and the district court necessarily requires more time to rule. *See Tellis*, 2020 WL 1249378 at *7. *Second*, Defendant's contention that Giroir's claims do not evade review in light of *Humphrey* is nonsensical. *See* Mem. at 5. *Humphrey* and *Giroir* seek distinct forms of relief—even where a plaintiff's claim for injunctive relief may be moot, claims for damages are still ripe. *See Duarte ex rel. Duarte* v. *City of Lewisville, Tex.*, 759 F.3d 514, 521 (5th Cir. 2014). Relatedly, any decision on mootness in *Giroir* would not impact the relief available in *Humphrey*. *Third*, named plaintiffs like Mr. Giroir retain a "personal stake" in obtaining class certification sufficient to satisfy Article III even after the expiration of their own substantive claims. *Geraghty*, 445 U.S. at 404; *accord Zeidman*, 651 F.2d at 1043. *Finally*, whether the circumstances of DOC's release process have changed is of no moment at this juncture. Whether the issues prompting this lawsuit have been remedied gets to the very heart of the controversy, which is reserved for post-certification litigation and must be developed through the very discovery Defendant seeks to avoid. *Cf. Amgen Inc.* v. *Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

At bottom, Defendant cannot show that Mr. Giroir's claims are moot because those claims are inherently transitory, and class claims challenging detention beyond lawful release dates require a flexibility that the default rules do not support. Accordingly, ordinary conceptions of mootness do not apply and do not deprive this Court of jurisdiction over these claims.

### C. The Certified Classes Meet All Requirements of Rule 23

Defendant's arguments that Rule 23(a)'s commonality and typicality requirements are not satisfied are meritless. The tests for commonality and typicality are "not demanding." *Mullen* v. *Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999). Indeed, courts across the country regularly certify classes with claims based on systemic delays within and beyond the carceral context, finding both commonality and typicality. *See, e.g.*, *Barnes* v. *District of Columbia*, 242 F.R.D. 113, 121–22 (D.D.C. 2007); *Healey*, 2021 WL 149859, at *20–23; *Dunn* v. *Cuyahoga Cnty.*, No. 1:23-CV-0364, 2026 WL 879235, at *21–24 (N.D. Ohio Mar. 31, 2026); *Gladney-Chase* v. *Collins*, 38 Vet. App. 216, 220–21 (2025); *Robidoux* v. *Celani*, 987 F.2d 931, 937 (2d Cir. 1993).

The certified classes here easily meet commonality and typicality requirements, and Defendant's Motion merely recites the same arguments previously and properly rejected by this Court. Defendant's claim that neither Plaintiffs nor the Court have identified a policy common to the class is not credible: this Court's certification order devotes ***twenty-six pages*** to describing the policies, patterns, and practices that underlie DOC's persistent overdetention problem, including both other courts' assessments of the same problem and the record in this case. *See Humphrey* Doc. 260 at 16–42. Not only have Plaintiffs identified Defendant's unconstitutional policies and practices in detail—plaintiffs in similar suits have been identifying those policies and practices *for several years*, *see id.* at 16–27, and Defendant still has failed to promulgate policies to rectify Louisiana's overdetention problem. Defendant has authorized a system of delay that routinely detains incarcerated Louisianans past their lawful release date. Plaintiffs are not required to identify a single written policy and, to the extent that Defendant's systematic overdetention is not embodied in such a policy, it is because Defendant has failed to establish a policy to rein in that

widespread unconstitutional practice. Defendant's failure to establish a policy in the face of rampant, unconstitutional overdetention is itself a common basis for all Plaintiffs' claims. *See Humphrey* Doc. 43 at ¶ 3 ("Still, Secretary LeBlanc has not implemented any policy to ensure that the DOC stops overdetaining—and falsely imprisoning—Louisianans."); *Giroir* Doc. 46 at ¶ 3 (same).

Defendant's argument regarding typicality merely restates its incorrect claim that no common issues exist. It fails for the reasons set forth above. In any case, there is no dispute here—the Named Plaintiffs' claims are identical to the claims brought by the classes they seek to represent. Each asserts that the Defendant violated his constitutional rights by failing to implement practices to curb Louisiana's overdetention crisis and each seeks the same relief as the classes they seek to represent. *See, e.g.*, *Humphrey*, Am. Compl. ¶¶ 1, 4; *Giroir*, Am. Compl. ¶¶ 1, 4.

## II. Defendant Fails to Demonstrate Harm Sufficient to Support a Stay

Defendant's only claimed harm is the cost of continuing to litigate this case. As a threshold matter, increased litigation and discovery costs alone do not constitute irreparable injury. *See, e.g.*, *A. A. ex rel. P.A.*, 2021 WL 2589180, at *2. On those grounds alone, Defendant has failed to demonstrate harm.

Further, Defendant's complaints regarding the effort and costs of discovery are inconsistent with his continued participation in discovery for a year while his appeals have been pending. Defendant's claim that Plaintiffs have escalated their discovery demands is beside the point. The information requested by Plaintiffs is relevant, necessary, and proportionate to the needs of the litigation. *See Humphrey* Doc. 280 at 6–10. Indeed, Defendant's Motion does not dispute that the information is properly discoverable. Further, were the Court to accept Defendant's view that a

Fifth Circuit decision is imminent, the scope of additional discovery will thus be limited in duration, and Defendant's associated costs will be minimal.

In sum, the lack of irreparable harm weighs against a stay. *See A. A. ex rel. P.A.*, 2021 WL 2589180, at *2; *see also M.D.* v. *Perry*, 2011 WL 7047039, at *2 (denying stay and holding that the "prospect of burdensome or expensive discovery alone is not sufficient to demonstrate irreparable injury") (citation omitted).

### III. A Stay Would Prejudice Plaintiffs and the Class in This Already-Delayed Litigation

A stay injures Plaintiffs by withholding "timely resolution to their constitutional claims, and meaningful improvements" to DOC's processes. *M.D.* v. *Perry*, 2011 WL 7047039, at *2. The longer Defendant delays production of pull document data, the greater the backlog of responsive documents that Defendant ultimately will have to produce. That backlog will further delay these proceedings that have already been plagued by Defendant's "refusal to engage in merits-based discovery." *Humphrey*, Doc. 199 at 4. All the while, DOC continues its unconstitutional practice of overdetention, depriving thousands of Louisianans of their liberty and depriving class members of prompt resolution of their claims. Defendant's claim that he has participated in some discovery has no bearing on the harm Plaintiffs face if he is permitted to shirk his obligation to continue participating in discovery. The harm to Plaintiffs weighs against a stay.

### IV. The Public Interest Favors Continued Discovery to Remedy Defendant's Rampant, Costly Overdetention of Louisianans

DOC's practice of depriving thousands of Louisianans of their liberty each year is an affront to the public interest. *See supra*, Section III.[3] Widespread violation of the Constitution is

[3] *See also Hicks v. LeBlanc*, 81 F.4th 497, 510 (5th Cir. 2023) ("Indeed, as our Court remains plagued by claims arising from inexplicable and illegal overdetention in Louisiana prisons, explanations scarcely arise, let alone satisfy scrutiny upon our review. The problem is endemic in Louisiana, where the process for calculating release dates is so

never in the public interest. *See Book People, Inc.* v. *Wong*, 91 F.4th 318, 341 (5th Cir 2024) ("[N]either the state nor the public has any interest in enforcing a regulation that violates federal law.") (cleaned up and quotation omitted). Defendant's repeated complaints of litigation costs in no way offset that fact. *See supra*, Section II. Indeed, Defendant's complaint that the State is "bleeding unrecoverable time and money" smacks of hypocrisy: DOC has admitted repeatedly—and Defendant LeBlanc has admitted personally—that the practice of overdetention costs taxpayers *millions* of dollars per year. *See Humphrey*, Doc. 1-3 at 4, Doc. 1-15 at 35:7-18; *Giroir*, Doc. 31-1 at 58:20-60:9. If Defendant is concerned about wasting taxpayer dollars, he has only himself to blame. Further, the time that is *truly* unrecoverable is the time that Plaintiffs have spent in prison while the State had no lawful authority to detain them—away from their families and loved ones, and unable to carry on with their lives—while DOC carelessly fiddles with paperwork.

As with the other factors, the public interest weighs against a stay.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's motion to stay.

Dated: November 2, 2026

Respectfully submitted,

**THE PROMISE OF JUSTICE INITIATIVE**

*/s/ Cecelia Trenticosta Kappel*
Cecelia Trenticosta Kappel, La. Bar No. 32736
Samantha Pourciau, La. Bar No. 39808
Michael Allen, La. Bar No. 41142
Hacer Kandara, La. Bar No. 40417
1024 Elysian Fields Avenue
New Orleans, LA 70117

flawed (to put it kindly) that roughly one in four inmates released will have been locked up past their release dates—for a collective total of 3,000-plus years.")

Telephone: (504) 529-5955
ctkappel@defendla.org
sbosalavage@defendla.org
mallen@defendla.org
hkandara@defendla.org

**LOEVY & LOEVY**

*/s/ Brian Morris*
Brian Morris (*pro hac vice*)
311 N. Aberdeen
Chicago, IL 60607
Telephone: (312) 243-5900
morris@loevy.com

**MOST & ASSOCIATES**

*/s/ William Most*
William Most, La. Bar No. 36914
Caroline Gabriel, La. Bar No. 38224
201 St. Charles Avenue, Suite 2500, #9685
New Orleans, LA 70170
Telephone: (504) 509-5023
williammost@gmail.com
Carolinegabriel@mostandassociates.com

*Attorneys for Named Plaintiffs and Class*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

*/s/ Jeremy A. Benjamin*
Jeremy A. Benjamin (*pro hac vice*)
Domonique Collins (*pro hac vice*)
Joshua Stallings (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
jbenjamin@paulweiss.com
dcollins@paulweiss.com
jstallings@paulweiss.com

*Attorneys for Named Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which effectuates service on all parties through their counsel of record.

*/s/ Jeremy A. Benjamin*
Jeremy A. Benjamin